## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **YURI TUPPINCE,** ) | |
| ) | |
|     *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No.: 3:18CV00809** |
| **STRATFORD UNIVERSITY, INC.,** ) | |
| **a Virginia corporation,** ) | |
| **formerly known as American** ) | |
| **Transportation Institute, Inc.,** ) | |
| ) | |
|     *Defendant.* ) | |

## COMPLAINT

Plaintiff, Yuri Tuppince, by counsel, files this Complaint against Defendant, Stratford University, Inc., a Virginia corporation formerly known as American Transportation Institute, Inc. ("Stratford University"), and in support thereof, states as follows:

### Nature of Claims

1. This is an action for equitable relief, declaratory relief, compensatory damages, and punitive damages to redress unlawful discriminatory and retaliatory practices during the course of, and in the termination of, the employment of the Plaintiff, Yuri Tuppince ("Tuppince"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C.S. § 1681, *et seq*.

## Jurisdiction, Venue, and Administrative Proceedings

2.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3).  The demand for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.

3.     With respect to her claims under Title VII, Tuppince timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of sex and retaliation on or about May 3, 2018. The EEOC issued Tuppince a notice of her right to sue on August 24, 2018. Tuppince has initiated this action within 90 days of the date that Tuppince received the notice of her right to sue.

4.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. § 2000e-5(f)(3).  The actions complained of took place in this State; evidence and employment records relevant to the allegations are maintained in this judicial district; Tuppince would be employed in this judicial district but for the unlawful actions and practices of Stratford University; and Stratford University is present and regularly conducts affairs in this judicial district.

## Parties

5.     Tuppince is a resident of Chesterfield County, Virginia.  At all times relevant to the matters alleged herein, Tuppince was an "employee" of Stratford University within the meaning of Title VII, 42 U.S.C. § 2000e(f).

6.     Stratford University is a for-profit proprietary school. At all times relevant to this Complaint, Stratford University was an employer engaged in an industry affecting commerce with more than 500 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Stratford University, on information and belief, markets, packages, and sells educational and immigration services at seven facilities in Maryland and Virginia, at a facility in New Delhi, India, and online. On information and belief, Stratford University's operations are centrally managed as a single business enterprise.

7.      Stratford University is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) and is an "educational institution" within the meaning of Title IX, 20 U.S.C. § 1681(c).

8.     Stratford University utilizes the various federal student aid programs that are authorized by Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070, *et seq.*, and 20 U.S.C. § 1087-51, *et seq.*, and is therefore subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

### Factual Allegations

9.     Tuppince is an African American female.

10.     On May 11, 2015, Stratford University hired Tuppince as a Director of Admissions in its Glen Allen facility in Henrico County, Virginia.

11.    For more than a year before she was hired, Tuppince had been recruited for the position at Stratford University by Nathan Hartman ("Hartman"), who was then employed as Stratford University's University Recruiter. (Hartman was later promoted to Director of Human Resources.) Tuppince had been in communication with Hartman and had worked with Hartman in Hartman's hiring of other management employees at Stratford University.  As a result of this contact, Tuppince knew that Stratford University had high employee turnover with its upper management and staff.

12.    Stratford University selected Tuppince for the position because of her ability to successfully manage high turnover and low employee morale.

13.    During Tuppince's employment, and despite Stratford Univerity's high employee turnover and low employee morale, she performed her job well and met all legitimate expectations of Stratford University. During her two years of employment, she received an excellent performance evaluation. In October 2016 she received a 3% merit increase in pay.

14.    Over the course of Tuppince's employment with Stratford University, she reported to five different supervisors during a period of two years. In each case, Stratford University fired or otherwise replaced the supervisor to whom she had reported with a new supervisor who was ill-prepared for the job. None of the supervisors to whom she reported remain employed by Stratford University.

15.     In April 2017, Stratford University employed Danny Barnes ("Barnes") as the campus president of its Glen Allen, Virginia, facility. Prior to his employment with Stratford University, Barnes had a history of sexually inappropriate behavior with his subordinates. *See Barnes v. United States*, 57 Fed. Cl. 204, 208 (2003). On information and belief, Stratford University had actual knowledge of Barnes' history of sexually inappropriate workplace behavior, or should have known of it, but did not properly advise or warn any employees of Stratford University's Glen Allen facility of Barnes' prior misconduct or take any other steps to dissuade Barnes from continued misconduct in his new position.

16.     Barnes continued to engage in sexually inappropriate behavior after he was employed as Stratford University's campus president.

17.     In Barnes' first month and a half as campus president, in the months of April and May 2017, Tuppince was subjected to or witnessed multiple incidents involving Barnes' inappropriate conduct including the following:

    a.  Barnes referred to Tuppince and one of her co-workers as "thick, chocolate sisters";

    b.  Referring to Tuppince and Helen Garland, an African American co-worker, Barnes told Tuppince that it was "a shame that two thick chocolate sisters couldn't get along" or words to that effect;

c. Barnes learned that Tuppince was to undergo a biopsy of her breast tissue when she asked for co-workers to pray for her. Barnes instead said that he would be especially praying for Tuppince's husband because "that's who will suffer the most," or words to that effect;

d. In Tuppince's presence, when a co-worker asked what kind of chicken Barnes wanted for lunch, Barnes responded, "I like my chicken like I like my women: dark";

e. Barnes told Tuppince that he believed that she used expletives too frequently. When she apologized, he said, "That's okay, it just sends my mind in a completely different direction and makes me think of other things," or words to that effect. Tuppince understood Barnes' statement about "other things" to be sexual innuendo;

f. Barnes told one of Tuppince's female co-workers that she reminded him of an ex-girlfriend named Kim. Barnes reminisced aloud to the employees and said that when Kim "nibbled on [his] ear," it would "make all the of the blood in his body rush to one area," or words to that effect;

g. Barnes gave Tuppince a Tootsie Roll candy and told her to "put it in [her] mouth" and then said, "My bad, your husband would

kill me if he knew I was telling you to put something short and black in your mouth," or words to that effect;

h. Barnes referred to Tuppince's new female subordinate employees (Admissions Officers) as "new meat";

i. In Tuppince presence, Barnes was demeaning to a female co-worker who was trying to explain a process issue to Barnes. With regard to that employee, Barnes said, "She is so cute when she gets angry," or words to that effect;

j. On at least one occasion, Barnes made an inappropriate gesture and comment about the appearance of a co-worker who was wearing a tightly fitted dress and high heels;

k. Barnes told Tuppince and another co-worker, "I keep watching you and [the other co-worker] because y'all both are chocolate and fine" or words to that effect;

l. Barnes made a comment to a student employee about a female employee's buttocks, saying, "it looked like two basketballs bouncing as she walked." The student employee was offended by the statement and notified Tuppince.

18. On or about May 15, 2017, Tuppince spoke to Yolanda Savoy, Stratford University's Health Sciences Program Lead, about Tuppince's discomfort with Barnes' inappropriate and unwelcome comments and behavior. Savoy advised Tuppince that Barnes' misconduct was not new and

told Tuppince to search on the internet for other allegations of misconduct against Barnes.

19.     On or about May 18, 2017, Tuppince complained to Hartman, who by that time was Stratford University's Director of Human Resources, regarding Barnes' unwelcome and inappropriate comments and behavior. Tuppince told Hartman that Barnes' behavior and comments were unwelcome, made her uncomfortable, and that she wanted them to stop.

20.     On or about May 25, 2017, a week after Tuppince complained about Barnes' inappropriate and unwelcome behavior, Stratford University reassigned her to report directly to Barnes.  Barnes immediately called Tuppince and said, "You now belong to me."  Barnes' statement made Tuppince extremely uncomfortable and she interpreted it to mean that he intended to prevent her from making any further complaints about his behavior.  Tuppince immediately reported Barnes' statement to the Military Manager, Keith Evans, and to Hartman.

21.     On or about May 26, 2017, Barnes called Tuppince into his office and showed her an e-mail that Barnes had received from Arthur Lee Smith ("Smith"), Stratford University's Vice-President of Faculty and Academic Affairs. Smith had acted as Barnes' mentor and had helped Barnes remain employed and advance at Stratford University. In the email, Smith told Barnes that Tuppince had made a complaint about Barnes. Smith advised

Barnes that he was not being reprimanded or investigated at that point but warned Barnes that Tuppince had complained.

22. Under Stratford University's published Title IX grievance procedure, "[a]ll discrimination or harassment matters should be brought to the immediate attention of the campus president and the campus president will assist the student in completing a formal grievance form and incident report to be submitted to the Title IX coordinator." The published Title IX grievance procedure does not address employee complaints of discrimination or harassment. Barnes did not assist Tuppince in completing a formal grievance form and incident report.

23. Hartman, Smith, and Barnes were each employees of Stratford University who had authority to address Tuppince's claims of sexual harassment and to institute corrective measures on behalf of Stratford University. Each had actual knowledge of Tuppince's complaints and failed adequately to respond. Hartman, Smith, and Barnes were each an "appropriate person," within the meaning of 20 USCS § 1682, to receive notification of Barnes' severe and pervasive inappropriate and unwelcome behavior of a sexual nature.

24. Neither Barnes, Smith, or Hartman, nor any other employee of Stratford University, made any timely attempt to stop Barnes' offensive conduct. None of them promptly investigated or sought to resolve the complaint Tuppince made regarding Barnes's severe and pervasive

inappropriate and unwelcome behavior. Strafford University's failure to promptly investigate Tuppince's complaints or provide a remedy or resolution was deliberate indifference to Barnes' severe and pervasive inappropriate and unwelcome behavior of a sexual nature.

25.    In the weeks that followed Tuppince's reassignment to report to Barnes, Barnes continued to make unwelcome comments of a sexual nature to Tuppince and began to touch her, without her consent, on her arm and back. Barnes' offensive behavior, which started when he became campus president, continued throughout his employment in that position.

26.    Tuppince interpreted her reassignment to work for Barnes, Barnes' showing her the email from Smith, and Barnes' continuing and worsening unwelcome conduct, to mean that Stratford University condoned Barnes's conduct and would ignore her complaints and that Barnes believed that he could act toward Tuppince with impunity. As Barnes continued to make unwelcome and inappropriate statements, and touch her against her will, Tuppince reasonably believed that any further complaint about Barnes' misconduct would be futile.

27.    On or about May 29, 2017, Stratford University finally investigated Tuppince's complaints and found them to be accurate and corroborated by other witnesses. On or about June 1, 2017, Stratford University terminated Barnes' employment.

28.     On July 14, 2017, Smith terminated Tuppince's employment because she had complained about Barnes' misconduct.

29.     Prior to her termination, Tuppince had not been given any warnings or write-ups about her performance. In the year preceding her termination, Tuppince had received a positive performance evaluation and a merit pay increase.

30.     Stratford University replaced Tuppince with a male who had less experience than she had.

## COUNT I
## TITLE VII – DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON PLAINTIFF'S SEX

31.     Each of the preceding paragraphs is incorporated herein by reference.

32.     Barnes' actions and conduct as set forth herein created a sexually hostile, offensive, and intimidating work environment and detrimentally affected Tuppince.

33.     Barnes' actions and conduct as set forth herein were severe and pervasive and based on Plaintiff's sex as a female and constituted discrimination based on sex.

34.     Barnes' actions and conduct described herein would have detrimentally affected a reasonable person of the same sex in Plaintiff's position.

35.     Stratford University knew or should have known of the sexual harassment described herein but failed to address Tuppince's complaints in a

timely manner and further failed to promptly implement effective and appropriate measures to stop the sexual harassment.

36. By failing to promptly conduct a thorough investigation of Plaintiff's allegations of sexual harassment, by failing to redress the sexual harassment by Barnes, by consciously failing to protect Plaintiff from sexual harassment, and by punishing Plaintiff for her complaint of sexual harassment, Defendant exacerbated the sexually hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII.

37. Defendant's actions, and failures to act, amounted to sex discrimination under Title VII.

38. Additionally, Stratford University discriminated against Plaintiff and terminated her because of her sex, and otherwise denied her equal terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

39. Stratford University's discrimination against Plaintiff was an intentional or reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

40. Stratford University engaged in its discriminatory actions described above with malice, or with a reckless indifference to Plaintiff's legal rights. Title VII provides that Plaintiff is therefore entitled to punitive damages for Stratford University's actions alleged herein.

41.     Plaintiff has been damaged as a result of Stratford University's unlawful conduct. As a direct and proximate result of Stratford University's conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of income, loss of employment, loss of employee benefits, litigation expense including attorney's fees, and consequential damages including the loss of employment opportunities, business and development opportunities, and other injury.

**COUNT II**
**TITLE VII – UNLAWFUL RETALIATION**

42.     Plaintiff incorporates by reference and realleges herein as though fully set out the preceding paragraphs.

43.     Stratford University, by its actions and failures to act, intentionally retaliated against Tuppince for complaining about gender discrimination, in violation of 42 U.S.C. § 2000(e), et seq.

44.     Stratford University terminated Tuppince in retaliation for her engaging in conduct protected by Title VII, including but not limited to her complaints about Barnes' severe and pervasive unwelcome conduct of a sexual nature.

45.     As a consequence of Stratford University's unlawful retaliation, Tuppince has suffered emotional distress, anxiety, stress, embarrassment,

humiliation, pain, suffering, and loss of enjoyment of life, as well as lost wages and other financial incidents and benefits of employment.

46.    As a consequence of the retaliatory and punitive actions of Stratfrod University, Tuppince has incurred and will continue to incur attorneys' fees, costs and expenses.

## COUNT III
## TITLE IX – DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON PLAINTIFF'S SEX

47.    Each of the preceding paragraphs is incorporated herein by reference.

48.    Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). Plaintiff, because of her sex (female), was denied terms and conditions of employment in violation of Title IX of the Education Amendments of 1972, as amended.

49.    Stratford University does and has received federal financial funding through various federal student aid programs that are authorized by Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070, *et seq.*, and 20 U.S.C. § 1087-51, *et seq.*, during all relevant times mentioned herein. Accordingly, Stratford University's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1687(2)(A).

50.    Barnes harassed Tuppince and subjected her to humiliating and demeaning words and conduct based on her sex.

51.   The harassment was so severe, pervasive, and objectively offensive that it and Defendant's failure to respond effectively constituted discrimination against Plaintiff on the basis of her sex.

52.   Defendant's officers with authority to take corrective measures had actual knowledge of Barnes' harassment of Tuppince, and the hostile and offensive actions and conduct of Barnes toward Tuppince and other female employees. Defendant's officers, further, knew or should have known of Barnes' propensity to engage in sexual harassment because of Barnes' prior history of similar conduct.

53.   Despite having knowledge of Barnes' harassing and demeaning conduct on the basis of Plaintiff's sex and Barnes' similar conduct toward other female employees, Defendant failed to take corrective measures.

54.   Defendant acted with deliberate indifference to known acts of sexual harassment toward Plaintiff.

55.   Defendant's acts and omissions constituted discrimination and indifference against Plaintiff on the basis of her sex.

56.   Additionally, Stratford University discriminated against Plaintiff and terminated her because of her sex, and otherwise denied her equal terms and conditions of employment in violation of Title IX.

57.   Plaintiff has been damaged as a result of Stratford University's unlawful conduct. As a direct and proximate result of Stratford University's conduct, Plaintiff has suffered, continues to suffer, and will in the future

suffer great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of income, loss of employment, loss of employee benefits, litigation expense including attorney's fees, and consequential damages including the loss of employment opportunities, business and development opportunities, and other injury.

## COUNT IV
## TITLE IX – UNLAWFUL RETALIATION

58.     Plaintiff incorporates by reference and realleges herein as though fully set out the preceding paragraphs.

59.     Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). Title IX also prohibits schools from retaliating against students, teachers, and administrators for opposing Title IX discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176-77 (2005). Title IX prohibits retaliation by a funding recipient against any individual who engages in activity protected by Title IX, making it unlawful for an educational institution receiving federal funds that knows of protected activity to engage in action that is materially adverse to the individual engaging in the protected activity.

60. Plaintiff engaged in protected opposition to Title IX discrimination when she complained to Hartman about Barnes' severe and pervasive inappropriate and unwelcome conduct of a sexual nature. Her protected opposition conduct was known to Stratford University and her complaint put Stratford University on notice of its responsibility to treat Tuppince in accord with its obligations under Title IX, including but not limited to its obligation not to engage in retaliation or condone retaliatory acts against Tuppince.

61. Stratford University retaliated against Tuppince by assigning her to report to Barnes, her harasser, by not disciplining Barnes or dissuading him from continued offensive behavior or taking any prompt and remedial action in response to Tuppince's complaint, and by permitting and condoning Barnes' continued offensive conduct and statements toward Tuppince.

62. Stratford University terminated Tuppince in retaliation for her engaging in conduct protected by Title IX.

63. Stratford University intentionally retaliated against Tuppince in violation of Title IX because she complained about Barnes' sexual harassment and hostile conduct toward herself and toward other female employees.

64. As a consequence of Stratford University's unlawful retaliation, Tuppince has suffered emotional distress, anxiety, stress, embarrassment,

humiliation, pain, suffering, and loss of enjoyment of life, as well as lost wages and other financial incidents and benefits of employment.

65. As a consequence of the retaliatory and punitive actions of Stratford University, Tuppince has incurred and will continue to incur attorneys' fees, costs and expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff, Yuri Tuppince, by counsel, requests that this Court:

A. Enter judgment declaring that the acts and practices complained of herein are violations of Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e, *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681, *et seq* ;

B. Award Tuppince damages against Stratford University in an amount to be proven at trial for her lost wages, salary, employment benefits, bonuses, and other compensation, pain and suffering, damage to career, and loss of enjoyment of life, as a result of Stratford University's wrongful conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*;

C. Enjoin Stratford University and order it to reinstate Tuppince to a position of equal duties and responsibilities as Tuppince would have received but for Stratford University's conduct, with equal pay and

benefits (retroactive to July 14, 2017), or, in the alternative, for an award of judgment for front pay and benefits under Title VII;

D. Issue an award of punitive damages in the amount of $300,000.00;

E. Enter judgment in Tuppince's favor and against Stratford University for discrimination on the basis of sex and retaliation in violation of Title IX, 20 U.S.C. § 1681 and award Tuppince damages against Stratford University in an amount to be proven at trial for the lost wages, salary, employment benefits, bonuses, and other compensation, pain and suffering, damage to career, and loss of enjoyment of life that she has experienced as a result of Stratford University's unlawful conduct;

F. For its violations of Title IX, enjoin Stratford University from receiving federal funding from federal student aid programs that are authorized by Title IV of the Higher Education Act of 1965, as amended, and other similar federal funding;

G. Issue an award in an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

H. Grant any other appropriate injunctive relief;

I. Issue an award of reasonable prejudgment interest, attorneys' fees, and costs, including expert witness fees, of this suit;

J.  Issue any other and further relief as this Court deems necessary and

proper.

**TUPPINCE REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

YURI TUPPINCE

 /s/Blackwell N. Shelley, Jr.
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB # 41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, VA 23220
(804) 644-9700
(804) 278-9634 [fax]
shelley@scs-work.com
schulte@scs-work.com
*Counsel for Plaintiff*